J-S28021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                    :         PENNSYLVANIA
                                    :
          v.                       :
                                    :
                                    :
PATRICK SEAN GULDEN           :
                                    :
          Appellant          :    No. 104 MDA 2022

Appeal from the Judgment of Sentence Entered December 15, 2021
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001047-2021

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:    **FILED: JANUARY 3, 2023**

Patrick Sean Gulden appeals from the judgment of sentence entered following his conviction for two counts each of terroristic threats and harassment.[1] Gulden's counsel filed a petition to withdraw as counsel and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967). We grant counsel's petition to withdraw and affirm the judgment of sentence.

Gulden was arrested in June 2021, following threats he made to his mother, Betty Ann Halderman, and her fiancée, James Williams. At trial, Halderman, Williams, and Gulden testified.

Halderman testified that she lived with Williams.[2] N.T., Oct. 27, 2021, at 14. Gulden resided with her and Williams "off and on." ***Id.*** at 15. One

---

[1] 18 Pa.C.S.A. §§ 2706(a)(1) and 2709(a)(3), respectively.

[2] Halderman is 73 years old and has been in a relationship with Williams for 33 years. N.T., Oct. 27, 2021, at 14-15.

evening in June 2021, Gulden went out and did not return home that night. *Id.* When he did return, "he wasn't right." *Id.* She testified that Gulden was talking about things that were not true, such as "saying [Halderman] wasn't his mother." *Id.* Gulden said he was a "one percenter" and he was "jumping up and down, walking back and forth, screaming." *Id.* at 15-16. When asked what Gulden meant by "one percenter," Halderman stated that "[h]e got a motorcycle and thinks he's in a gang, and he's not." *Id.* at 16. Halderman testified that Gulden said that "somebody has to die tonight because youse [sic] are trying to kill me." *Id.* When she said they were not trying to kill him, he responded, "Well, somebody's setting me up with the . . . federal government." *Id.* at 16-17. Halderman stated that Gulden was not talking normally, was jumping up and down, and "walking around with his hands (indicating) and around the chair saying you have to die, one of you have [sic] to die because youse [sic] are trying to get me killed." *Id.* Gulden further stated that "[b]y nine o'clock, if I don't have my keys, one of you is gonna die." *Id.* She testified that she was scared. *Id.*

Halderman testified that after three or four hours she left, saying she was going out for a cigarette, and Gulden locked the door so she could not return. *Id.* at 18, 25. She said Williams was still in the house and she was concerned Gulden would do something to Williams. *Id.* When she returned, Williams was outside and Gulden had locked the doors. *Id.* at 19. After Gulden found the keys, he apologized to Williams but continued to threaten Halderman. *Id.* at 20.

Williams testified that Gulden came home and "was flipping out," saying "[he was] a one percenter, somebody's got to die, it's either you or Betty tonight." *Id.* at 35-36. He stated Gulden was circling Williams "like he was gonna do something." *Id.* at 35. Williams testified it went on like that "for a good while," until Halderman left to get cigarettes. *Id.* at 36. He stated he was scared "because when somebody is circling you like that, you don't know what they're gonna do," and Gulden's pupils were small, and he was unpredictable. *Id.* Williams testified that after Halderman left, he went outside, and Gulden "was still carrying on, swinging his hands, and saying stuff." *Id.* at 37.[3]

Gulden testified in his own defense. He testified that he "just nonchalantly came in, said my keys are missing, I'd like to know where my keys are." *Id.* at 55. Nothing else happened on the night in question. *Id.* He testified that "right after [he] asked them [where his keys were,] [his] keys all of a sudden appeared," and he "kn[e]w they had something to do with them going missing." *Id.* at 56. Gulden testified that Halderman's and Williams' testimony was "all made up," and they were "just trying to get [him] jammed up." *Id.* at 57.

The jury found Gulden guilty of the above-referenced offenses. At the sentencing hearing, Gulden informed the court he wanted to proceed *pro se*.

---

[3] Police Officer Travis Bowman also testified. N.T., Oct. 27, 2021, at 48-51.

The court held a **Grazier**[4] hearing, after which it found Gulden knowingly, voluntarily, and intelligently waived his right to counsel, but also appointed trial counsel as stand-by counsel. N.T., Dec. 15, 2021, at 15. The court sentenced Gulden to concurrent terms of one to five years' incarceration for each terroristic threat conviction and concurrent terms of 30 to 90 days' incarceration for the harassment convictions. Gulden filed a *pro se* post-sentence motion, which the trial court denied. The court again advised Gulden of his right to counsel, and the court conducted another colloquy, after which it found Gulden knowingly, voluntarily, and intelligently waived his right to counsel. Order, Jan. 5, 2022. The court also again appointed trial counsel as stand-by counsel. Gulden filed a timely notice of appeal.

While the appeal was pending, Gulden filed in this court an application for the appointment of counsel. We remanded to the trial court to conduct a hearing to determine whether Gulden wished to proceed with appointed counsel from the public defender's office or *pro se*. Order, Mar. 9, 2022. The trial court responded that Gulden wished to have counsel, and that it had appointed trial counsel, who had also acted as stand by counsel, as counsel for the appeal. Counsel filed an **Anders** brief in this court and a petition to withdraw as counsel. Gulden filed a *pro se* response.

Counsel lists one issue in the **Anders** brief: "Did the Commonwealth present sufficient evidence to support the convictions for terroristic threats?"

---

[4] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

*Anders* Br. at 4. Gulden's *pro se* response raises a claim of ineffective assistance of counsel and a claim that the county and public defender office were conspiring against him. Motion to Raise Any Points that I Deem Worthy of the Court's Attention, filed July 20, 2022 ("Gulden's Response").

Because counsel has filed an *Anders* brief, we must first address whether counsel has satisfied the procedural requirements under *Anders*. *See Commonwealth v. Cox*, 231 A.3d 1011, 1014 (Pa.Super. 2020). An *Anders* brief is filed "when counsel believes an appeal is frivolous and wishes to withdraw from representation[.]" *Id.* In such a case, counsel must:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record, counsel has determined the appeal would be frivolous; (2) file a brief referring to any issues that might arguably support the appeal, but which does not resemble a no-merit letter; and (3) furnish a copy of the brief to the defendant and advise him of his right to retain new counsel, proceed *pro se*, or raise any additional points he deems worthy of this Court's attention.

*Commonwealth v. Edwards*, 906 A.2d 1225, 1227 (Pa.Super. 2006) (citation omitted).

Additionally, an *Anders* brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of

- 5 -

record, controlling case law, and/or statutes on point that
have led to the conclusion that the appeal is frivolous.

**Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009).

If counsel has satisfied these requirements, we then must conduct "a full examination of all the proceedings[] to decide whether the case is wholly frivolous." **Commonwealth v. Yorgey**, 188 A.3d 1190, 1196 (Pa.Super. 2018) (*en banc*) (quoting **Anders**, 386 U.S. at 744). Should we determine that the appeal is wholly frivolous, we may grant counsel's petition to withdraw. However, "if [this Court] finds any of the legal points arguable on their merits (and therefore not frivolous) [we] must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." **Id.** (quoting **Anders**, 386 U.S. at 744).

Counsel completed the procedural requirements for withdrawal under **Anders**. He filed a petition with this Court to withdraw, stating that after his examination of the record, he has determined the appeal would be frivolous. He also filed a brief referring to any issues that might arguably support the appeal, and he furnished a copy of the brief to Gulden and advised him of his right to retain new counsel, proceed *pro se*, or raise any additional points he deems worthy of this Court's attention. **See** Application to Withdraw as Counsel, filed June 29, 2022; **Anders** Br. at App. D, Letter from Kent D. Watkins to Patrick S. Gulden, dated June 29, 2022. Further, counsel's **Anders** brief summarizes the procedural history and facts, with citations to the record; refers to anything in the record that counsel believes arguably supports the appeal; sets forth counsel's conclusion that the appeal is frivolous; and

- 6 -

explains his reasons for concluding that the appeal is frivolous, including citation to relevant law.

We will now address the issue raised in counsel's **Anders** brief – whether the evidence was sufficient to support the terroristic threat convictions. A challenge to the sufficiency of the evidence requires us to determine whether the evidence supports every element of the crime charged beyond a reasonable doubt. **Commonwealth v. Forrey**, 108 A.3d 895, 897 (Pa.Super. 2015). As sufficiency of the evidence is a question of law, our standard of review is *de novo*. **Id.** Our scope of review is limited to the record evidence, which we view in the light most favorable to the Commonwealth, as verdict-winner. **Id.**

"A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to . . . commit any crime of violence with intent to terrorize another[.]" 18 Pa.C.S.A. 2706(a)(1). "[T]he Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." **Commonwealth v. Reynolds**, 835 A.2d 720, 730 (Pa.Super. 2003) (quoting **Commonwealth v. Tizer**, 684 A.2d 597, 600 (Pa.Super. 1996)) (alteration in **Reynolds**). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." **Id.** (quoting **In re J.H.**, 797 A.2d 260, 262 (Pa.Super. 2002)). "[T]he harm sought to be prevented by the statute is the psychological

- 7 -

distress that follows from an invasion of another's sense of personal security." *Id.* (citation omitted). "Section 2706 is not meant to penalize mere spur-of-the-moment threats which result from anger." *Id.* (quotation marks and citation omitted). Therefore, the court "must consider the totality of circumstances to determine whether the threat was a result of a heated verbal exchange or confrontation." *Id.* (citation omitted).

Here, the victims testified Gulden threatened them for numerous hours, repeatedly stating that someone was going to die. While threatening them, he circled them and acted erratically. Both victims testified that they were scared by Gulden's threats and behavior. While Gulden offered an exculpatory version of events, the factfinder was capable of determining which version to believe. We find no reasonable basis on which to challenge the sufficiency of the evidence. *See id.*; *Commonwealth v. Fenton*, 750 A.2d 863, 865-66 (Pa.Super. 2000) (sufficient evidence for terroristic threats conviction where defendant festered anger and showed a desire to terrify by stating he planned to kill and had the means to do it and telling the victim to lock his door).

We next address the issues raised in Gulden's response. He raises claims of ineffective assistance of counsel and claims the county and public defender office were conspiring against him. He claims "[t]here is a connection between the couple I was staying with working with the county [and] public defender . . . to target me purposefully with intent." Gulden's Response at 2.

We cannot review his ineffectiveness claims on direct appeal. *Commonwealth v. Holmes*, 79 A.3d 562, 563-64 (Pa. 2013) (providing that,

- 8 -

J-S28021-22

with limited exceptions, a court cannot review ineffective assistance of counsel claims on direct appeal). Such claims must be raised in a petition filed pursuant to the Post Conviction Relief Act. **See** 42 Pa.C.S.A. §§ 9541-9546. **Id.**[5]

We have reviewed the record and have found no non-frivolous claims for appeal. We therefore grant the petition to withdraw as counsel and affirm the judgment of sentence.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/3/2023

---

[5] To the extent Gulden also attempts to raise the claims raised in his *pro se* 1925(b) statement, that is, that his convictions or sentence violated the double jeopardy clause of the United States Constitution, and his sentence was harsh and extreme, we conclude these claims lack a reasonable basis and are therefore frivolous. **See** Trial Court Opinion, filed Feb. 9, 2022, at 3.

- 9 -